UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOYCE ROBBERSON,

    Plaintiff,

v.                                                Case No. 1:07-cv-882
                                                HON. GORDON J. QUIST

ACCESS BUSINESS GROUP, LLC,

    Defendant.
_____/

**OPINION**

      Plaintiff, Joyce Robberson, filed suit against Defendant, Access Business Group ("ABG"), under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 to 1461, challenging the denial of severance benefits allegedly owed to her pursuant to an employer-provided Severance Program. Additionally, Plaintiff alleges age discrimination in violation of Michigan's Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101, *et. seq.* Both parties have filed Motions for Judgment on the Administrative Record concerning Plaintiff's ERISA claim. The Court believes that oral argument would not be helpful in resolving the issues presented. For the following reasons, the Court will deny both motions.

**Background**

      Robberson began her employment with ABG in 1979. ABG is a component of the Alticor Inc. ("Alticor") family of companies. As an employee of ABG, Robberson was covered by the Alticor Inc. Amended and Restated Severance Program (the "Plan"). The Plan provides that "an employee will be eligible for Benefits if the employee's employment is terminated involuntarily ... due to job elimination caused by restructuring, outsourcing, technology changes or work elimination, and if the employee meets the requirements of this Program." (Administrative Record

("AR") at 2.) Under the heading "Claims Procedure" the Plan states that "[i]f for any reason a benefit specified in this document is not paid when due, the employee may make a claim in writing to the Plan Administrator." (AR at 6.) The Plan provides that if a claim is denied, the employee shall receive written notice giving the specific reason for the denial, reference to the relevant provisions of the Plan, a description of any additional material necessary for the claim, and an explanation of the Plan's review procedure. (AR at 6.) The Plan identifies the Plan Administrator as:

> Alticor Inc.
> 7575 Fulton Street, East
> Ada, Michigan 49355
> (616) 787-6000

(AR at 10.)

Robberson was terminated on October 9, 2006. Upon her termination, she was offered a Confidential Employment Separation and Release Agreement. Accompanying this agreement was a letter, on ABG letterhead, giving Robberson 21 days to consider the agreement. (Resp. to Def.'s Mot. for J. on the Admin. R., Attach. A.) The letter was signed by Ruth Kaminski, HR Business Unit Consultant. On October 30, 2006, Kaminski wrote another letter to Robberson concerning additional documents in her personnel file. Of particular relevance to the instant motions, this letter was written on Alticor letterhead. (*Id.*)

Robberson obtained counsel, and on October 24, 2006, counsel sent a letter to Ruth Kaminski concerning Robberson's termination. (Br. in support of Def.'s Mot. for J. on the Admin. R., Ex. A.) The letter was addressed to: "Ruth Komenski [sic], Access Business Group, HR Business Unit Consultant, 7575 Fulton Street East, Ada, MI, 49355." (*Id.*) In the letter, Robberson's counsel asserts his belief that Robberson was subjected to illegal discrimination and that the severance package being offered to her is not in conformity with the ERISA-based Plan.

(*Id.*)  The letter states that "[i]n lieu of filing a lawsuit, Mrs. Robberson has authorized me to make a counter-offer to the current proposed severance." (*Id.*)  With regard to her rights under the Plan, the letter asserts that "Mrs. Robberson is entitled to 46.5 weeks of her base salary, as well as 3 months of health coverage continuation under the plain language of ALTICOR'S Severance Program, beginning November 1, 2006." (*Id.*)  The letter further provides that "[t]here is nothing in Mrs. Robberson's personnel file that indicates that Mrs. Robberson is ineligible for the Severance Program we are requesting." (*Id.*)  The letter concludes that "if you are not the proper person to receive this proposal, please let me know." (*Id.*)

Attorney Steve Palazzoli contacted Robberson's counsel and told him that Robberson was not eligible for benefits under the Plan because she was not terminated as part of a reduction in force; however, Robberson never received anything in writing concerning her right to severance benefits under the Plan.  (Resp. to Pl.'s Mot. for J. on the Admin. R., Ex. B.)  Robberson initiated this lawsuit, and the Court ordered briefing on the ERISA claim in accordance with *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609 (6th Cir. 1998).  ABG argues that it is entitled to judgment on Robberson's ERISA claim for three reasons: (1) Robberson failed to exhaust her administrative remedies; (2) it is not the proper defendant; and (3) Robberson is not entitled to benefits under the plain language of the Plan.  Robberson counters that she did exhaust her administrative remedies, that ABG violated statutory and Plan-mandated procedural protections, and that she is entitled to benefits under the Plan.

## Discussion

"The administrative scheme of ERISA requires a participant to exhaust his or her administrative remedies prior to commencing suit in federal court." *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir. 1991).  "[T]he exhaustion requirement enables plan fiduciaries to

'efficiently manage their funds; correct their errors; interpret plan provisions; and assemble a factual record which will assist a court in reviewing the fiduciaries' actions.'" *Baxter v. C.A. Muer Corp.*, 941 F.2d 451, 453 (6th Cir. 1991) (quoting *Makar v. Health Care Corp. of Mid-Atlantic*, 872 F.2d 80, 83 (4th Cir. 1989)). The exhaustion requirement "is the law in most circuits despite the fact that ERISA does not explicitly command exhaustion." *Ravencraft v. UNUM Life Ins. Co. of Am.*, 212 F.3d 341, 343 (6th Cir. 2000). Additionally, the fact that a plan makes administrative review permissive does not excuse a claimant from availing himself or herself of the review process before filing a federal suit. *Baxter*, 941 F.2d at 454. However, exceptions to the exhaustion requirement "include futility of the administrative process and inadequacy of the administrative remedy." *Id.* at 453 (citing *Springer v. Wal-Mart Assoc. Group Health Plan*, 908 F.2d 897, 899 (11th Cir. 1990)). "[T]he decision whether to apply the exhaustion requirement is committed to the district court's sound discretion." *Id.*

ABG's primary argument is that Robberson failed to exhaust administrative procedures because she never made a claim for benefits. ABG argues that Robberson's letter of October 24, 2006, was not a claim for benefits because it was sent to the wrong entity and was an offer of settlement. In response, Robberson argues that the October 24, 2006, letter was a claim for benefits and that ABG violated procedural protections contained in the Plan and in 29 U.S.C. § 1133 by failing to give a proper notice of denial.[1]

The only provision in the Plan that provides for making a claim for benefits states that "[i]f for any reason a benefit specified in this document is not paid when due, the employee may make

---

[1]ABG first argues that the letter is inadmissible as an offer of settlement under Fed. R. Evid. 408. This rule prohibits evidence of settlement "when offered to prove liability for, invalidity of, or amount of a claim that was disputed as to validity or amount . . ." The letter is not barred by this rule, however, because the letter is not offered to prove liability on Robberson's ERISA claim; rather, it is offered to show that Robberson exhausted her administrative remedies.

a claim in writing to the Plan Administrator." However, neither the Plan nor judicial precedent provide guidance as to what type of writing qualifies as a "claim." Black's Law Dictionary defines a claim as "[t]he assertion of an existing right; any right to payment or to an equitable remedy, even if contingent or provisional." (8th ed. 2004). Under the circumstances, the Court concludes that the October 24, 2006, letter was a claim for severance benefits under the Plan. The letter identified the Plan, including the fact that it was governed by ERISA, and asserted that the severance package being offered to Robberson was not in conformity with the amount of severance to which she was entitled under the Plan. The letter stated that Robberson was entitled to 46.5 weeks of severance pay under the plain language of the Plan and that nothing in Robberson's personnel file indicated she was not eligible under the Plan. Through this information, the letter reasonably apprised its recipients that Robberson felt entitled to benefits under the Plan and that she was invoking her right to those benefits. Thus, by apprising ABG of her belief that she qualified for benefits under the Plan, Robberson asserted an existing right; as such, the letter was a "claim" for the purpose of exhausting administrative remedies.

ABG advances two arguments why the letter was not a proper "claim" for benefits: it was sent to the wrong person and it was an offer of settlement. As to the addressee of the letter, ABG references the portion of the Plan stating that "the employee may make a claim in writing to the Plan Administrator." ABG argues that while the Plan Administrator is identified in the Plan as Alticor, the letter was addressed to Ruth Kaminski at ABG. While factually true, the argument is unpersuasive. The address for Alticor (as identified in the Plan) and ABG is the same. Moreover, the letter was sent to Ruth Kaminski, the HR Business Unit Consultant who offered the initial severance package to Robberson and corresponded with Robberson on both ABG and Alticor letterhead. Additionally, email correspondence shows that Ruth Kaminski had an email address

affiliated with Alticor.[2] (AR at 75.) In light of the interconnections of the addresses and employees of ABG and Alticor, the claim was not improper simply because the second address line of the letter read "Access Business Group" when, according to ABG, it should have read "Alticor." It was reasonable for Robberson to conclude that the letter was a proper "claim" since she sent it to Ruth Kaminski at the same address identified in the Plan, and she asserted her belief that she was entitled to full benefits under the Plan. Further, the letter said "if you are not the proper person to receive this proposal, please let me know." If the entities were sufficiently distinct that the "claim" had to be submitted to Alticor personnel, then ABG could have told Robberson this instead of telling her that she was not eligible for benefits without making any sort of formal determination in conformity with Plan procedures.

ABG's second argument, that the letter was not a "claim" because it was an offer of settlement, is equally unpersuasive. While the letter did contain language like "settlement" and "counter-offer," it was still an assertion of Robberson's right to benefits contained in an employment welfare plan governed by ERISA. The Plan does not set forth what a writing must contain, or may not contain, to be considered a claim. Moreover, to the extent the letter was a "counter-offer," it was a counter-offer to a severance package being offered to Robberson, a matter closely related to that governed by the Plan, and her response to that offer was to invoke her right to severance benefits allegedly owed to her under the Plan. Therefore, the letter was a "claim" for benefits.

Determining that Robberson filed a claim for severance benefits, however, is not the end of the Court's inquiry. Robberson argues that after she filed her claim, ABG failed to comply with

---

[2] While other ABG employees have email addresses in the format of [Name]/Access@Alticor, Ruth Kaminski's email address is "Ruth Kaminski/HR/Alticor@Alticor." (AR at 75.)

procedural protections contained in the Plan and in 29 U.S.C. § 1133 in denying in her claim. 29 U.S.C. § 1133 imposes on an employee benefit plan an obligation to:

> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
>
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied a full and fair review by the appropriate named fiduciary of the decision for denying the claim.

Plan provisions also mandate that if a claim is denied, the employee shall receive written notice giving the specific reason for the denial, reference to the relevant provisions of the Plan, a description of any additional material necessary for the claim, and an explanation of the Plan's review procedure. (AR at 6.)

The Sixth Circuit has "adopted a 'substantial compliance' test in deciding whether denial notices meet the requirements of § 1133.'" *McCartha v. Nat'l City Corp.*, 419 F.3d 437, 444 (6th Cir. 2005). The "Court considers all communications between an administrator and plan participant to determine whether the information provided was sufficient under the circumstances." *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 436 (6th Cir. 2006). "In this analysis, this Court asks whether the plan administrators fulfilled the essential purpose of § 503-notifying Plaintiff of their reasons for denying [her] claims and affording [her] a fair opportunity for review." *Id.* "Generally, an administrator's failure to comply with ERISA procedural requirements can result in a remand by the reviewing court to the administrator." *Id.*

After Robberson made her claim for benefits, her attorney was told by telephone that Robberson was not eligible for benefits under the Plan because she was not terminated as part of a reduction in force. Robberson never received anything in writing regarding her eligibility for benefits, and she was never notified of the Plan's review procedures. Moreover, Robberson was told

that she was not eligible for benefits because she was not terminated as part of a reduction in force without reference to the relevant Plan provisions or evidence supporting that determination. The Court concludes that ABG failed to give sufficient notice to Robberson of its reason for denying the claim and failed to afford her a fair opportunity for review. Thus, ABG did not substantially comply with the requirements of 29 U.S.C. § 1133.

As to remedies for ABG's procedural violations, the Court can either remand to the plan administrator for a proper initial determination and administrative review or the Court can conduct its own *de novo* review of plaintiff's eligibility for benefits. *McCartha*, 419 F.3d at 444 ("If the denial notice is not in substantial compliance with § 1133, reversal and remand to the district court or to the plan administrator is ordinarily appropriate."); *Moore*, 458 F.3d at 436 ("Generally an administrator's failure to comply with ERISA procedural requirements can result in a remand by the reviewing court to the administrator."); *but see Univ. Hosp. of Cleveland v. South Lorain Merch. Ass'n Health & Welfare Benefit Plan and Trust*, 441 F.3d 430, 434 (6th Cir. 2006) ("This Court ruled that the proper remedy for a failure to provide appropriate administrative review is to have the district court 'reconsider the denial of benefits after the claimant has been given the opportunity to submit additional evidence' rather than remanding the case to the Plan for further consideration.") Faced with this choice, one district court determined that remand to the plan administrator should be appropriate except for "egregious procedural violations where there was either an intentional act on the part of the administrator or the record reveals that the general procedures are so lacking that concerns persist over Plaintiff's ability to again receive due process upon remand to the administrator." *Gilliam v. Hartford Life & Accident Ins. Co.*, No. 05-219, 2006 WL 2873475, at *9 (E.D. Ky. Oct. 5, 2006).

Under the circumstances of this case, the Court believes that the appropriate remedy is to stay the ERISA claim while Robberson pursues an initial determination on her claim for benefits and an administrative review should that initial decision be unfavorable. This will give the parties the opportunity to assemble an administrative record,[3] interpret plan provisions, and reach determinations that this Court can properly review in light of the plain language of the Plan and the evidence before the administrator.[4] While the Court concludes that Robberson did make a claim for benefits and that ABG violated ERISA procedural protections in denying that claim, the Court can understand ABG's confusion over whether Robberson was making a claim for benefits given the settlement posture of the October 24, 2006, letter and its discussion of an unrelated age discrimination claim. Thus, ABG's conduct does not appear to be intentional or willful. Moreover, a proper administrative review will give Robberson an opportunity to gather and submit evidence supporting her entitlement to benefits and respond to an initial determination. In light of these factors, the proper remedy for ABG's procedural violations (following an admittedly imperfect claim) is to wipe the slate clean, so to speak, and allow for a proper initial determination of Robberson's eligibility for benefits and give her the opportunity to pursue an administrative review should that initial determination be unfavorable.

Robberson argues that remand to the administrator is improper because administrative procedures would be futile. Generally, courts do not force plaintiffs to pursue administrative

---

[3]The administrative record in the present case is nothing more than a compilation of evidence ABG submitted to support its assertion that Robberson was terminated for performance-related reasons. It is not, however, a compilation of evidence that was considered by a person determining whether Robberson was eligible for benefits. As there was no formal determination, a proper administrative record does not exist at this time.

[4]ABG also argues that it should be dismissed from Robberson's ERISA claim because it is not a proper defendant since it is not the plan administrator. As of now, ABG has been sufficiently involved in Robberson's right to severance benefits to remain a defendant. *See Moore*, 458 F.3d at 438 (proper defendant is anyone "who exercises discretionary control over a plan's management, administration, or assets."). However, the Court anticipates that once a formal determination has been made, and if an administrative review is unfavorable to Robberson, the evidence will more easily demonstrate who should defend that determination should Robberson seek this Court's review.

remedies when resort to those remedies would be futile or the remedy inadequate. *See Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 419 (6th Cir. 1998). "The standard for adjudging the futility of resorting to administrative remedies provided by a plan is whether a clear and positive indication of futility can be made." *Id.* As such, Robberson must show "that 'it is certain that h[er] claim will be denied on appeal, not merely that [s]he doubts that an appeal will result in a different decision." *Id.* (quoting *Lindemann v. Mobil Oil. Corp.*, 79 F.3d 647, 650 (7th Cir. 1996)). Robberson is unable to show a clear and positive indication that her claim will be denied initially or on appeal. Therefore, the Court concludes that administrative procedures would not be futile.

## Conclusion

Robberson's letter of October 24, 2006, was a claim for benefits because it identified an ERISA-based plan and asserted her right to benefits under the Plan's provisions. ABG violated procedural protections contained in the Plan and in 29 U.S.C. § 1133 in denying Robberson's claim for benefits. Under the specific circumstances of this case, the Court concludes that the proper remedy for ABG's procedural violations is to remand to the administrator. The Court will stay Robberson's ERISA claim until an initial determination has been made on Robberson's claim for severance benefits and administrative remedies have been completed.

An order consistent with this Opinion will be entered.


Dated: May 21, 2008                    /s/ Gordon J. Quist
                                         GORDON J. QUIST
                                   UNITED STATES DISTRICT JUDGE